MONIQUE C. WINKLER (Cal. Bar No. 213031)
JASON H. LEE (Cal. Bar No. 253140)
BERNARD B. SMYTH (Cal. Bar No. 217741)
  smythb@sec.gov
MARC D. KATZ (Cal. Bar No. 189534)
  katzma@sec.gov
STEVE VARHOLIK (Cal. Bar No. 221554)
  varholiks@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California  94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 3:23-cv-00959 |
| Plaintiff, | |
| vs. | COMPLAINT |
| ROBERT D. CHRISTENSEN; ANTHONY M. MATIC; FORESEE, INC.; THE COMMISSION PDX, LLC; THE POLICY PDX, LLC; INNINGS 150, LLC, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY OF THE ACTION

1. Defendants Robert D. Christensen ("Christensen") and Anthony M. Matic ("Matic") had a business plan to buy Midwest real estate funded by other peoples' money. The idea was to entice friends, business contacts, and other people to invest money that Defendants Christensen and Matic would use to buy rental homes in the Great Lakes region and repay them with income or equity from the properties. Defendants Christensen and Matic offered and sold these people unregistered promissory notes with above-market interest rates of 9-15%, and further promised to return the money, with the interest and an additional lump sum payout, within just a few months.

2. But from the outset, Defendants Christensen and Matic's plan was not financially viable and they could not achieve sufficient returns from rental income or appreciation in the equity from the properties they acquired to repay investors in only a few months according to the terms of the notes that were issued. The money they needed to fund what was essentially a long-term real estate investment business far exceeded the liquidity available from business operations, and the mountain of short-term debt they accumulated from individual investors and interest owed grew quickly without the means to repay it. But for years, Defendants Christensen and Matic continued to offer and sell these high-interest promissory notes – that constituted unregistered securities – with false promises of rapid repayment. They used some of this new investor money to pay their obligations to earlier investors. Defendants Christensen and Matic also paid themselves significant sums of money from these promissory note funds and used note investors' money for their personal expenses and entertainment.

3.     Beyond selling these unregistered promissory notes and misusing the proceeds, Defendants Christensen and Matic also attempted to convince promissory note investors to forego repayment of what they were owed on existing notes to participate in a large real estate investment fund they were supposedly creating. But here, too, Defendants' representations and promises did not match reality, and the purported investment fund merely operated to prolong and increase the investors' losses.

4.     Between 2018 and 2022, Defendants Christensen and Matic obtained over $10 million dollars from these investors using promissory notes issued under the names of three entities they owned and fully controlled. These entities were Defendants Foresee, Inc. ("Foresee"), The Commission PDX, LLC ("Commission PDX"), and The Policy PDX, LLC ("Policy PDX") (collectively, the "Issuer Companies"). Virtually none of the money they borrowed was repaid on time and about three-quarters of the investors have received no principal return for their investments. As of the end of 2022, Defendants' investors were owed over $15 million. In addition to the Issuer Companies, Defendants Christensen and Matic also established Defendant Innings 150, LLC ("Innings 150"), an entity they created to advance their plan, where they transferred the real estate properties they did purchase with investors' money. Among other things, Defendant Innings 150 was used to hold title to the properties in furtherance of the other Defendants' machinations and to borrow even more money from commercial lenders. Some of this money from commercial lenders also was improperly used by Defendants for personal expenses and to make payments to earlier investors, creating the illusion of a financially viable investment enterprise.

5.     By this action, the SEC seeks to hold Defendants Christensen and Matic, along with the entities that they created and controlled, responsible for their conduct that violated the

federal securities laws. By their actions, Defendants Christensen, Matic and the Issuer Companies violated the securities registration provisions of the Securities Act of 1933 ("Securities Act"). Additionally, all of the Defendants violated the antifraud provisions of the Securities Act and the Securities Exchange Act of 1934 ("Exchange Act").

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

6. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77t(e), and 77v(a)] and Sections 20(a), 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78t(a), 78u(d), 78u(e), and 78aa].

7. Venue in this District is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because acts and transactions constituting violations alleged in this Complaint, including the fraudulent offer and sale of unregistered securities to Oregon residents, occurred within the District of Oregon.

8. Assignment to the Portland Division of this Court is proper because a substantial part of the events, misrepresentations, and omissions that give rise to the claims alleged in this Complaint occurred in Multnomah County, Oregon.

## DEFENDANTS

9. Robert D. Christensen, age 53, is a resident of Sherwood, Oregon. He is the founder and president of Foresee, co-founder and a partner of Commission PDX and Policy PDX, and beneficial owner and controlling person of Innings 150. At all relevant times, Christensen, along with Matic, was ultimately responsible for the actions of the Issuer Companies and Innings 150.

10. Anthony M. Matic, age 53, is a resident of Damascas, Oregon. He is the co-founder and a partner of Commission PDX and Policy PDX, and beneficial owner and controlling person of Innings 150. At all relevant times, Matic, along with Christensen, was ultimately responsible for the actions of Commission PDX, Policy PDX, and Innings 150.

11. Foresee, Inc. is an Oregon corporation headquartered in Portland, Oregon. Foresee was owned and controlled by Christensen during the relevant period of this action and issued promissory notes that are the subject of this action.

12. The Commission PDX, LLC is an Oregon limited liability company headquartered in Portland, Oregon. Commission PDX was beneficially owned and controlled by Christensen and Matic during the relevant period of this action and issued promissory notes that are the subject of this action.

13. The Policy PDX, LLC is a Nevada limited liability company headquartered in Portland, Oregon. Policy PDX was beneficially owned and controlled by Christensen and Matic during the relevant period of this action and issued promissory notes that are the subject of this action.

14. Innings 150, LLC is a Nevada limited liability company headquartered in Portland, Oregon. Innings 150 was beneficially owned and controlled by Christensen and Matic during the relevant period of this action and holds title to the real estate properties acquired and managed by Foresee, Commission PDX, and Policy PDX that are the subject of this action.

## FACTUAL ALLEGATIONS

### A. Background

15. From January 2018 to September 2022, Defendants Christensen and Matic used the Defendant Issuer Companies to raise money from investors to fund a real estate investment

business that they founded together.  Prior to entering into this business, Defendant Christensen was a residential loan officer and loan originator for national mortgage companies and Defendant Matic was a licensed real estate agent.  Their business model involved pooling investor funds to purchase, improve, and then rent out single family and multi-family residential properties.  The business plan was to then use rental income and potentially loan proceeds funded by the equity from the properties to pay back investors.

16. In total, during this period, Defendants Christensen and Matic purchased interests in 34 single and multi-family homes in Pennsylvania, Indiana, and Ohio as part of their investment enterprise.  The properties have a recent estimated value of approximately $6 million and generate approximately $348,000 in annual gross rental revenue prior to the deduction of property taxes, insurance, property manager fees, and other expenses.

**B. Defendants' Misleading Offer and Sale of Promissory Notes**

17. Defendants Christensen and Matic obtained investor funding for their real estate investment business through the sale of unregistered securities.  Between January 2018 and September 2022, Defendants Christensen, Matic, and the Issuer Companies raised over $10 million from the sale of unregistered promissory notes to more than 40 investors.  The promissory notes were issued by the Issuer Companies and purported to provide investors annualized interest rates of 9% to 15%, as well as a supplemental lump sum payment due to investors.  The vast majority of the notes were unsecured on their face, had stated repayment terms of two to four months, and were issued on a rolling basis almost monthly.  No registration statement has ever been filed or in effect with respect to these securities.

18. All of the promissory notes, which were signed by either Defendant Christensen or Defendant Matic, stated that invested funds would be used "exclusively for commercial or

business purposes." This statement was untrue and misleading by virtue of the Defendants' knowing, intentional, or reckless omissions. Defendants Christensen and Matic misled investors to believe that this statement meant that they would use investors' money exclusively to purchase and manage rental real estate. Defendant Christensen told investors that their funds were being used to purchase and manage rental properties and Defendant Matic endorsed those statements. Defendant Christensen also routinely invited investors to his office to show them images of the properties that he and Defendant Matic purchased as well as new properties that they planned on purchasing with additional investor funds to bolster their assertions. In reality, Defendants Christensen and Matic were using significant amounts of investors' money in a Ponzi-like manner to pay earlier note holders and keep their investment scheme alive. They also transferred investor money to their personal bank accounts and used investor funds to pay for their personal expenses and entertainment. These uses of investor funds were not disclosed to investors and were not authorized by the promissory notes.

19.  Naturally, investors understood that their invested funds would only be used to purchase, improve, and rent real estate properties because they were not provided a full picture of Defendants' spending. Defendants knew or were reckless in not knowing that they were misleading investors by not telling them how they were spending investor money.

20.  Defendants Christensen, Matic, and the Issuer Companies offered the promissory notes to Defendant Christensen's former mortgage clients as well as Defendants Christensen's and Matic's friends, contacts, and acquaintances. Specifically, as part of their solicitation efforts, Defendant Christensen had a large database of approximately 7,000 former mortgage clients and contacts from which he and the Defendant Issuer Companies found potential investors to solicit and offer the notes. Additionally, Defendants Christensen and Matic found investors through

word-of-mouth and referrals from third-parties. They also asked some of their existing investors to help them solicit new investors.

21. Defendants Christensen, Matic, and the Issuer Companies distributed notes to as many willing investors as they could find, did not attempt to assess the accredited status of any of these note investors, and did not negotiate the note agreements with any investors. They essentially offered the same terms to all investors with minor variations in interest rates and repayment timing depending on how much money they received.

22. Defendant Christensen convinced investors who simply wanted to refinance the mortgage on their homes or to sell their homes to invest the proceeds in promissory notes. Defendants Christensen and Matic also accepted funds directly from investors' individual retirement accounts knowing that these investors relied on this money for their future security. A number of investors relied on their promissory note investments to pay their living expenses, healthcare, and for retirement. Defendants Christensen and Matic accepted money from investors who were not wealthy or experienced in investing. For some investors, their promissory note investment represented their life savings.

23. In order to further market the promissory notes, Defendants Christensen and Matic told investors about a plan to create an investment fund and offered investors the opportunity to participate in this fund. Defendants Christensen and Matic told investors the fund would supposedly own and operate a real estate portfolio – the same portfolio that had been acquired using the capital from promissory notes – that allegedly would generate income, appreciate in value, and pay investors dividends. They also offered investors the option to convert the principal, interest, and fees the investors were owed on their promissory notes to

equity membership units in the fund. While Defendants Christensen and Matic took some steps to establish an investment fund, the fund was never ultimately launched.

24. Defendants Christensen and Matic were buried in promissory note debt that was due and tried to convince their promissory noteholders to exchange the debt they were owed for equity interests in a non-existent fund without any valuable assets.

25. Defendants knew or were reckless in not knowing that they were misleading investors by not sharing with investors how much debt the enterprise had relative to the few properties they owned and that they were completely underwater.

26. The Defendants' misrepresentations and omissions concerning how they would use investors' money were critically important to investors in deciding to purchase Defendants Christensen, Matic, and the Issuer Companies' promissory notes, and investors were denied the opportunity to make a fully informed investment decision.

### C. Defendants' Ponzi-Like Scheme

27. Between January 2018 and September 2022, Defendants Christensen, Matic, and the Issuer Companies operated a Ponzi-like scheme. They never had enough cash on hand and did not generate sufficient cash flow through rents and property appreciation to timely pay investors according to the terms of their promissory notes. Thus, despite having short repayment terms, the Defendant Issuer Companies virtually never repaid the notes within the stated time frames and the principal on over 70 of approximately 90 original notes remains unpaid today. When principal or interest payments were made to investors, the source of those payments was almost always new investor money.

28. Defendants Christensen and Matic created the appearance of a successful real estate investment venture that generated significant cash returns for investors by continuously

raising capital from new and repeat investors, and then using that money to make payments owed to pre-existing investors.

29. When investors raised concerns about not being paid on time, Defendants Christensen and Matic appeased those investors by reminding them that they were purportedly earning a large amount of interest and late fees, which would continue to accrue as long as the investors kept their money with the Defendant Issuer Companies. Defendants Christensen and Matic also provided investors with periodic account statements reflecting high purported gains due to large amounts of earned interest. In reality, though, Defendants Christensen, Matic, and the Issuer Companies did not have the funds available to pay investors what they were owed and the reported paper gains would never be realized by investors.

30. Defendants Christensen and Matic, and the Issuer Companies they controlled, knew or were reckless in not knowing that they could not pay investors by the promised dates on the notes prior to issuing the notes without a continuous and significant infusion of new investor money. This was clear by simply looking at Defendants' bank account statements, which often had little or no cash prior to the infusion of new money from promissory note investors. Defendants Christensen and Matic also knew or were reckless in not knowing that the verbal assurances they made to investors about the investors' earnings and the account statements they provided did not reflect actual money Defendants had on hand or could achieve in the short term. Nevertheless, they continued to issue notes to investors without disclosing any of this information, and also continued to make assurances to investors that the investors would earn significant returns for the purpose of continuing to perpetuate their fraudulent scheme.

31. The Defendants' misrepresentations and omissions concerning the use of new investor money to pay preexisting investors and Defendants' ability to repay investors were

critically important to investors in deciding to purchase the promissory notes at issue, and investors were denied the opportunity to make a fully informed investment decision.

### D. Defendants' Unauthorized and Undisclosed Use of Investor Funds for Personal Purposes

32. Between January 2018 and September 2022, Defendants Christensen and Matic only used a portion of the money provided by note investors to acquire and manage rental properties, contrary to their representations to note investors. A large amount of investor funds was used for unauthorized and undisclosed purposes. Defendants Christensen and Matic knew or were reckless in not knowing that such spending of investors' money was not authorized, appropriate, or consistent with their representations to investors.

33. First, as described above, Defendants Christensen and Matic regularly operated a Ponzi-like scheme where they used money from new investors to make payments owed to existing investors and never disclosed this information. Defendants Christensen, Matic, and the entities they controlled knew or were reckless in not knowing that paying existing investors with new investor money was not an authorized use of this money.

34. Second, Defendants Christensen and Matic each transferred hundreds of thousands of dollars in investor funds to their personal accounts without disclosing this to investors. The timing and amounts of these transfers was determined based on their personal needs for cash and the availability of cash. The transfers did not bear any relation to income generated by their business. Defendants Christensen, Matic, and the entities they controlled knew or were reckless in not knowing that paying themselves large sums directly from investor deposits was not an authorized use of that money.

35. Third, Defendants Christensen and Matic used investor money to pay for personal food, alcohol, and entertainment on a frequent basis. This included, among other things, at least

one vacation, casino trips, massages, guided hunting and fishing outings, a whiskey club membership, and cryotherapy. Defendants Christensen and Matic never disclosed any of this spending to investors. They also knew or were reckless in not knowing that paying for their personal expenses and entertainment with investor money was not an authorized use of this money.

36. Investors in the Defendants' scheme did not know that their money was being spent in the manner described above in paragraphs 32 to 35. These investors were entitled to know this information and would have wanted to know this information prior to making their investments. The information Defendants Christensen, Matic, and the Issuer Companies withheld was critical to investors' decision making, and investors were denied the opportunity to make a fully informed investment decision.

### E. Additional Misleading and Deceptive Conduct

37. Defendants Christensen, Matic, and the Issuer Companies purchased real estate properties with investor money by means of all of the foregoing misleading statements and then transferred the properties to a separate and related entity, Defendant Innings 150. Defendant Innings 150 showed no liabilities, including the substantial debt that the Issuer Companies owed to their individual promissory note investors, and was used to perpetuate the fraudulent scheme. Defendants Christensen and Matic marketed Defendant Innings 150 as an investment fund that investors could ultimately participate in so that they could continue to collect money from investors and appease investors' concerns about repayment. Additionally, Defendants Christensen and Matic used this entity to obtain loans from commercial lenders by pledging the real estate properties they purchased with individual investors' money as collateral. Defendants Christensen and Matic also used some of the money they obtained from these commercial

lenders for personal expenses and Ponzi-like payments. They knew or were reckless in not knowing that they were misusing investor money and that they were misleading their individual investors and commercial lenders in an effort to perpetuate their fraudulent scheme.

38. Defendants Christensen and Matic at all times relevant hereto completely controlled the Defendant Issuer Companies and Defendant Innings 150. These companies were the alter-egos of the individual defendants and there was no separation between the decisions of the individuals and the entities. Accordingly, the conduct, knowledge, and recklessness of Defendants Christensen and Matic are imputed to the Issuer Companies and Innings 150. These entities had no ability to make decisions that were different from their controlling owners.

**F. The Current Financial State of the Issuer Companies**

39. As of December 2022, the Defendant Issuer Companies had sold over $10,000,000 in promissory notes to investors and, with outstanding principal, interest, and late payment penalties combined, owe those investors over $15,000,000.

40. As of this date, all of the outstanding promissory notes are long past due. Additionally, the Defendant Issuer Companies owe commercial lenders at least $4,000,000, and one of these lenders has a lien on all of the portfolio properties. The combined total that the Defendant Issuer Companies owe is at least $19,000,000.

41. As of the end of 2022, the Defendant Issuer Companies had virtually no cash in their bank accounts. The portfolio properties generate approximately $29,000 per month in gross revenue through rents and have a recent estimated value of roughly $6 million. Given the amount owed to commercial lenders and promissory note holders, the Defendant Issuer Companies are substantially underwater on their debt and do not have the ability to make all creditors and noteholders whole.

## TOLLING AGREEMENTS

42. During the investigation conducted by the Commission's staff preceding this action, Defendants Christensen, Matic, Foresee, and Commission PDX entered into agreements by which they agreed that the running of any statute of limitations applicable to any action or proceeding against them by the Commission, including any sanctions or relief that might be imposed, is tolled and suspended for the periods October 28, 2022 through January 25, 2023 and March 24, 2023 through June 22, 2023. Defendant Policy PDX entered into the same agreement for the period March 24, 2023 through June 22, 2023.

## FIRST CLAIM FOR RELIEF

**(Violations of Section 17(a) of the Securities Act by All Defendants)**

43. The Commission realleges and incorporates by reference paragraphs 1 through 42.

44. Defendants Christensen, Matic, the Issuer Companies, and Innings 150, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a) with scienter, employed devices, schemes, or artifices to defraud;

(b) obtained money or property by means of untrue statements of a material fact or by omitting a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

45. By reason of the foregoing, Defendants Christensen, Matic, the Issuer Companies, and Innings 150 violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by Defendants Christensen, Matic, and the Issuer Companies)**

46. The Commission realleges and incorporates by reference paragraphs 1 through 42.

47. Defendants Christensen, Matic, and the Issuer Companies, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, or of the facilities of a national securities exchange, with scienter:

    (a) employed devices, schemes, or artifices to defraud;

    (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including the purchasers or sellers of securities.

48. By reason of the foregoing, Defendants Christensen, Matic, and the Issuer Companies violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder by Defendant Innings 150)**

49. The Commission realleges and incorporates by reference paragraphs 1 through 42.

50. Defendant Innings 150, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, or of the facilities of a national securities exchange, with scienter:

(a) employed devices, schemes, or artifices to defraud; and

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including the purchasers or sellers of securities.

51. By reason of the foregoing, Defendant Innings 150 violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## FOURTH CLAIM FOR RELIEF

**(Violation of Sections 5(a) and 5(c) of the Securities Act by Defendants Christensen, Matic, and the Issuer Companies)**

52. The Commission realleges and incorporates by reference paragraphs 1 through 42.

53. The promissory notes offered and sold by Defendants Christensen and Matic, through the Issuer Companies, are securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 77c(a)(10)].

54. By engaging in the conduct described above, Christensen, Matic, and the Issuer Companies, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

55. Be engaging in the conduct described above, Defendants Christensen, Matic, and the Issuer Companies violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

I.

Find that each of the Defendants Christensen, Matic, the Issuer Companies, and Innings 150 committed the violations alleged herein;

II.

Permanently restrain and enjoin Defendants Christensen, Matic, the Issuer Companies, and Innings 150 from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

III.

Permanently restrain and enjoin Defendants Christensen, Matic, the Issuer Companies, and Innings 150 from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

IV.

Permanently restrain and enjoin Defendants Christensen, Matic, and the Issuer Companies from directly or indirectly violating Sections 5 of the Securities Act [15 U.S.C. §§ 77e];

V.

Permanently restrain and enjoin Defendants Christensen and Matic from directly or indirectly, including, but not limited to, through any entity owned or controlled by each of them, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Defendants Christensen and Matic from purchasing or selling securities for their own personal accounts;

VI.

Permanently restrain and enjoin the Defendant Issuer Companies and Innings 150 from directly or indirectly, including, but not limited to, through any entity owned or controlled by each of them, participating in the issuance, purchase, offer, or sale of any security;

VII.

Order Defendants to disgorge their ill-gotten gains according to proof, plus prejudgment interest thereon;

VIII.

Order Defendants Christensen and Matic to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

IX.

Enter a judgment imposing an officer and director bar against Defendants Christensen and Matic pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

X.

Order, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), (5)], that the Defendant Issuer Companies and Innings 150 cease operations and sell all real estate property owned by them or affiliated entities;

XI.

Order, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), (5)], that the Defendant Issuer Companies and Innings 150 limit the use of any assets that they own, control, or possess solely to pay for: (i) necessary costs associated with selling the real estate property owned by them or affiliated entities, or (ii) necessary costs associated with maintaining such property until it is all sold;

XII.

Order, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), (5)], that the Defendant

Issuer Companies and Innings 150 limit the use of all proceeds received from the sale of any real estate property owned by them or their affiliated entities solely to pay any disgorgement owed until all such disgorgement and prejudgment interest thereon has been satisfied;

XIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

XIV.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

Dated: June 30, 2023            Respectfully submitted:


By: s/Steve Varholik
Steve Varholik (Cal. Bar No. 221554)
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION